**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

HENRY RIVERA RODRIGUEZ,

      **Petitioner,**

      v.                           **CASE NO.  20-3297-JWL**

ROBERT GUADIAN, et al.,

      **Respondents.**

<u>**MEMORANDUM AND ORDER**</u>

This matter is a petition for writ of habeas corpus filed under 28 U.S.C. § 2241. Petitioner is currently detained at the Chase County Jail in Cottonwood Falls, Kansas, on the authority of the Enforcement and Removal Operations ("ERO"), Immigration and Custom Enforcement ("ICE"), a sub agency of the U.S. Department of Homeland Security ("DHS"). Petitioner seeks immediate release from custody, asserting that his continued detention pending removal has exceeded the six-month period considered presumptively reasonable.  The Court issued an Order to Show Cause (Doc. 2), Respondents filed an Answer and Return (Doc. 3), and Petitioner filed a Traverse (Docs. 4, 5).

**I.  Background**

Petitioner is a native and citizen of Venezuela. (Doc. 3–1, at ¶ 5) (Declaration of Deportation Officer Larry J. Similton) ("Similton Decl.").  Petitioner was previously removed from the United States on November 17, 2014, pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) for committing an aggravated felony. *Id.*, ¶¶ 10-14.  U.S. Border Patrol apprehended Petitioner in 2018 after he illegally reentered the United States in violation of 8 U.S.C. § 1326(a). *Id.*, ¶ 15. Petitioner was extradited to Kansas pursuant to an outstanding warrant, served time in the custody of the Kansas Department of Corrections, and then was released to ICE pursuant to an

ICE immigration detainer on December 2, 2019. *Id.*, ¶¶ 15-18.  On that same date, ICE issued a decision and order to reinstate Petitioner's prior order of removal pursuant to 8 U.S.C. § 1231(a)(5) and 8 C.F.R. § 241.8. *Id.*, ¶ 19.  Petitioner has remained in ICE custody at the Chase County Jail since December 2, 2019. *Id.*, ¶ 18.

After notice and an opportunity for Petitioner to submit evidence to support his release from ICE custody and a Post Order Custody Review conducted before the end of Petitioner's 90-day removal period, Field Office Director Robert Guadian issued a Decision to Continue Detention of Petitioner on February 25, 2020, while awaiting a response from Venezuela regarding Petitioner's travel document. Similton Dec., ¶ 20, 22-23. ICE continued to monitor its request for a travel document and the likelihood it would be issued. *Id.*, ¶¶ 21, 24.

Petitioner's custody status was again reviewed on April 29, 2020, and a Transfer Checklist was submitted to the Headquarters Post-Order Detention Unit on May 26, 2020, for a 180-day Post Order Custody Review determination. *Id.*, ¶¶ 25-29. On June 11, 2020, Removal and International Operations ("RIO")—Western Hemisphere Unit Chief Annette D. Joseph issued a Decision to Continue Detention, explaining that Petitioner will not be released at that time because, in part, Petitioner's criminal history, which includes convictions for robbery and battery, shows he is a risk to public safety and ICE expects to receive Petitioner's travel document soon. *Id.*, ¶¶ 7-8, 30-32.

On June 12, 2020, ERO received a travel document for Petitioner from the Embassy of Venezuela. Similton Dec., ¶ 33. The travel document was issued on May 25, 2020, with an expiration date of August 25, 2020. *Id.* However, during this time, Venezuela restricted and/or ceased all private and commercial flights due to the COVID-19 pandemic and, as a result, Venezuela was on hold for removals from the United States. Similton Dec., ¶ 36. Venezuela later

announced in December 2020 that limited commercial flights were available.

Petitioner's Transfer Checklist was submitted for a 270-day Post Order Custody Review on August 21, 2020, but Headquarters Post-Order Detention Unit delayed issuing a decision on the matter because Venezuela was on hold for removals due to the COVID-19 pandemic. Similton Dec., ¶¶ 34-36. Petitioner's Transfer Checklist was again submitted for a 360-day Post Order Custody Review on November 6, 2020, and a Decision to Continue Detention regarding both the 270-day and 360-day Post-Order Custody Reviews was issued on November 16, 2020, with an explanation that Petitioner did not meet the criteria for release set forth in 8 C.F.R. § 241.4(e) because Petitioner's criminal history shows that he is a risk to public safety and ICE ERO is in possession of a travel document issued by the Embassy of Venezuela to facilitate Petitioner's removal. *Id.*, ¶¶ 38-40. The 360-day Post Order Custody Review Transfer Checklist was updated on December 7, 2020, and a Decision to Continue Detention was issued on that same date with an explanation identical to the previous decision. *Id.*, ¶¶ 41-43. On December 21, 2020, another Decision to Continue Detention was issued with the same explanation. *Id.*, ¶ 45.

Respondents allege that since flights to Venezuela have now resumed from a select few countries, it is anticipated that ERO will be able to either remove Petitioner to Venezuela or escort him to a last port destination (e.g. Mexico) and visually observe Petitioner board an outbound plane destined to Venezuela to effect Petitioner's removal. *Id.*, ¶ 37. ERO is currently organizing a removal flight for Venezuelan citizens, including Petitioner, with a tentative removal date scheduled to occur before January 31, 2021. *Id.*, ¶ 44. The Embassy of Venezuela has verified that Petitioner is a citizen of Venezuela, has agreed to issue a travel document and passport once travel has been scheduled to facilitate Petitioner's removal from the United States, and has confirmed the expiration of Petitioner's travel document will not affect Petitioner's

removal. *Id.*

## II. Discussion

To obtain habeas corpus relief, a petitioner must demonstrate that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S. C. § 2241(c)(3). The federal district courts have habeas corpus jurisdiction to consider the statutory and constitutional grounds for immigration detention that are unrelated to a final order of removal. *Demore v. Kim*, 538 U.S. 510, 517–18 (2003); *see also Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) ("Challenges to immigration detention are properly brought directly through habeas.") (citing *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001)).

Upon the entry of a final removal order, the matter enters the "removal period," and the statutory authority for detention shifts to 8 U.S.C. § 1231. After an order of removal becomes administratively final, the Attorney General "shall detain the alien" during the 90-day removal period established under 8 U.S.C. § 1231(a)(2). *See Zadvydas*, 533 U.S. at 683; *Morales-Fernandez v. INS*, 418 F.3d 1116, 1123 (10th Cir. 2005). Generally, the government is required to remove the alien held in its custody within the 90-day removal period. *See* 8 U.S.C. § 1231(a)(1)(A)–(B).

While the government may detain an "inadmissible" or criminal alien beyond the statutory removal period, *see* 8 U.S.C. § 1231(a)(6),[1] the government may not detain such an alien indefinitely. *Zadvydas*, 533 U.S. at 699. Instead, the detention of an alien subject to a final

---

[1]  Section 1231(a)(6) provides that:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order or removal, may be detained beyond the removal period and, if released, shall be subject to terms of supervision in paragraph (3).

Petitioner was previously removed pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii), and his prior order of removal was reinstated pursuant to 8 U.S.C. § 1231(a)(5) and 8 C.F.R. § 241.8.

order of removal for up to six months is presumptively reasonable in view of the time required to accomplish removal.  *Id*. at 701.  Beyond that period, if the alien shows that there is "no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing."  *Id*.  Furthermore, as the period of detention grows, "what counts as the 'reasonably foreseeable future' conversely would have to shrink."  *Id*.  The six-month presumption does not mean that every alien must be released after that time, but rather an alien may be detained "until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future."  *Id*.

Although Petitioner has been detained in excess of the presumptively reasonable six-month period, he must show that there is no significant likelihood of removal within the reasonably foreseeable future.  Petitioner alleged in his Petition that he has been detained for over one year after the reinstatement of his order of removal; Venezuela is refusing to accept detainees being removed from the United States; and although Venezuela authorized Petitioner's removal around May 26, 2020, that removal never occurred and the authorization expired on August 25, 2020.  Petitioner asserts that Venezuela has closed its doors to all travel from the United States due to the COVID-19 pandemic.  Petitioner met the initial burden under *Zadvydas* by showing, at the time he filed this action on November 30, 2020, that he had been held for more than six months following the order of removal without any significant likelihood of removal in the reasonably foreseeable future.

The burden therefore shifted to Respondents to rebut that showing.  Respondents assert that Venezuela has not refused to accept Petitioner; to the contrary, Venezuela previously issued a travel document to facilitate Petitioner's removal and has recently indicated its intent to provide an updated travel document to replace the one that expired.  Respondents allege that

since flights to Venezuela have now resumed from a select few countries, it is anticipated that ERO will be able to either remove Petitioner to Venezuela or escort him to a last port destination (e.g. Mexico) and visually observe Petitioner board an outbound plane destined to Venezuela to effect Petitioner's removal. Respondents state that "ICE ERO anticipates a tentative removal date scheduled to occur before January 31, 2021." (Doc. 3, at 12.)

Petitioner argues that Respondents have only shown a theoretical path to removal, noting that the Venezuelan airport remains closed to flights from the United States.   Petitioner also points to a January 20, 2021 Memorandum by the Acting Secretary of DHS, placing a 100-day moratorium on removals.

The website for the U.S. Embassy, Venezuela, states that commercial flights are operating and that on January 18, the Venezuelan Civil Aviation Authority (INAC) announced that commercial flights are now limited to Mexico, Panama, the Dominican Republic, Turkey and Bolivia.[2]  The effect of the implementation of the January 20, 2021 Memorandum is unclear. The Memorandum provides that:

> No later than February 1, 2021, the Acting Director of ICE shall issue written instructions with additional operational guidance on the further implementation of this removal pause. The guidance shall include a process for individualized review and consideration of the appropriate disposition for individuals who have been ordered removed for 90 days or more, to the extent necessary to implement this pause. The process shall provide for assessments of alternatives to removal including, but not limited to, staying or reopening cases, alternative forms of detention, custodial detention, whether to grant temporary deferred action, or other appropriate action.

---

[2] *See* https://ve.usembassy.gov/covid-19-information/ (last visited January 21, 2021).

U.S. Department of Homeland Security Memorandum, *Review of and Interim Revision to Civil Immigration Enforcement and Removal Policies and Priorities,* January 20, 2021, p. 4.[3]  The Court is also aware that the Memorandum provides that "[t]hese guidelines and priorities are not intended to, do not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by any party in any administrative, civil, or criminal matter." *Id.*

Respondents state that ICE ERO anticipates a tentative removal date scheduled to occur before January 31, 2021.  Because this anticipated removal date is in the near future, and the Acting Director of ICE will be submitting instructions and guidance on implementation of the removal pause by February 1, the Court will grant the parties an opportunity to submit status reports after those upcoming dates.

**IT IS THEREFORE BY THE COURT ORDERED** that the parties shall file status reports by **February 8, 2021.**

**IT IS FURTHER ORDERED** that pursuant to Fed. R. Civ. P. 25(d), the Clerk is directed to substitute Robert M. Wilkinson as the current Acting Attorney General, and to substitute David Pekoske as the current Acting Secretary of DHS.

**IT IS SO ORDERED**.

**Dated January 25, 2021, in Kansas City, Kansas.**


s/ John W. Lungstrum
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**

---

[3] https://www.dhs.gov/sites/default/files/publications/21_0120_enforcement-memo_signed.pdf (last visited Jan. 22, 2021).